**PUFAHL et al. v. BOWLES, Adm'r, OPA.**

No. 13195.

Circuit Court of Appeals, Eighth Circuit.

April 9, 1946.

G. W. Townsend, of Minneapolis, Minn. (R. H. Fryberger, of Minneapolis, Minn., on the brief), for appellants.

Abraham H. Maller, Sp. Appellate Atty., OPA, of Washington, D. C. (George Moncharsh, Deputy Adm'r for Enforcement, Milton Klein, Director, Litigation Division,

David London, Chief, Appellate Branch, Harold Craske, Atty., OPA, all of Washington, D. C., and Amos J. Coffman, Regional Enforcement Executive, and George E. Leonard, Regional Litigation Atty., OPA, both of Chicago, Ill., on the brief), for appellee.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

The defendants in the court below, acting under authority of section 129 of the Judicial Code, 28 U.S.C.A. § 227, appeal from an order granting a temporary injunction restraining them from violating the Emergency Price Control Act of 1942, 50 U.S. C.A.Appendix, § 901 et seq., and Maximum Price Regulation 244 (7 F.R. 8558) promulgated thereunder.

The defendants constitute a partnership engaged in manufacturing and selling gray iron castings at their foundry in Ramsey County, Minnesota. Regulation 244 establishes the maximum prices at which such castings may be sold and delivered. Alternative methods for determining the maximum price are prescribed, the second of which only is pertinent. This method, called the "pricing method", is set out in section 1421.166(b) of the regulation, and reads:

"(1) Pricing method.—(i) The seller shall employ the applicable pricing method which was in use at the foundry on February 1, 1942, and which has been or will be filed with the Office of Price Administration in accordance with section 1421.161 herein, employing each of the pricing factors reflected in such method at the levels prevailing at such time, except as specified in subparagraph (5) hereinbelow, including: direct labor rates (applied in accordance with subparagraph (2) below); direct material costs (applied in accordance with subparagraph (3) below); overhead (burden) rates (applied in accordance with subparagraph (4) below); subcontracted machinery service costs (applied in accordance with subparagraph (5) below); and mark-up, margin or profit (applied in accordance with subparagraph (6) below): * * *

"(ii) The price arrived at by use of the pricing method shall be adjusted for all applicable charges, discounts, quantity differentials or other allowances in use at the foundry on February 1, 1942."

For the purpose of complying with regulation 244 the partnership filed with the Chicago Regional Office of Price Administration its Pricing Method or formula in the form of a letter dated December 26, 1942. The material part of the letter follows:

"We operate a jobbing foundry making light weight castings on a production basis. We have not developed any intricate cost system but have been using a pricing formula that makes for easy figuring and we have been able to meet competitive bids by use of our method, and consequently have not lost any business.

"We maintain time records on the direct labor time applied to each job as far as core time and molding time is concerned. No other time records are kept on a job basis. We then apply a flat hourly rate of $4.00 per hour for this time and a rate of 3¢ per pound for the metal to arrive at our piece price. This metal cost is figured on the weight of the finished casting as it is shipped, and does not include any of the weight involved in the gates or risers.

"These two rates are all inclusive and take care of profit margins, overhead, and all labor. After a job is figured on this basis, the selling price is reviewed by Mr. Pufahl and on his experience of some 45 years in the foundry business, he checks the accuracy of the time required to make the job and the selling price per pound and if price is out of line, an adjustment is made to adjust it to a price that will meet competition.

"We submit our method of figuring the job cost estimate set up in paragraph 6 of the instructions sheet.

"Molder produces 400 pounds castings in 8 hrs.

| | |
|---|---|
| 8 hours at $4.00 per hr. | 32.00 |
| cost per lb. | .08 |

"Coremaker produces cores for 800 lbs. castings in 8 hrs.

| | |
|---|---|
| 8 hours at $4.00 per hr. | 32.00 |
| Cost per lb. | .04 |

"400 lbs. of castings cleaned and shipped

| | |
|---|---|
| 400 lbs. at .03 per lb | 12.00 |
| cost per lb. | .03 |

"The price on this work would be 15¢ per lb. by the use of our method."

The complaint alleged that since the filing of such pricing method defendants have sold and delivered gray iron castings at

prices in excess of the applicable maximum ceiling price and have failed to follow the formula contained in their letter of December 26, 1942, and plaintiff demands that they be enjoined from continuing such unlawful practice. The answer admitted the filing of the letter of December 26, 1942; admitted that it truly expressed the pricing methods employed by the defendants on February 1, 1942, for gray iron castings; and alleged that by reason of variables occurring in the manufacture of gray iron castings, the pricing at $4 per hour for molders' and coremakers' time and 3 cents per pound for metal was merely a base price from which adjustments up or down were made in the selling price to meet the requirements and contingencies embraced in such variables.

The motion for a temporary injunction was submitted upon the complaint and answer and the affidavits attached thereto. The court found the facts in favor of the plaintiff and entered the order appealed from, enjoining defendants from "Using or employing any system of pricing defendants' gray iron castings, except those definite and concrete factors contained in the pricing method or formula of defendants dated December 26, 1942, and filed with the Office of Price Administration, same being a flat hourly rate of $4.00 per hour for core-making time and $4.00 per hour for moulding time, and the rate of 3¢ per pound for metal used, figured on the weight of the finished castings as they are shipped; that being the method or formula filed by defendants as in effect in their establishment on February 1, 1942."

The defendants contend that the court erred in ordering them to employ only the two definite and concrete factors set out in their pricing method or formula, and in denying them the right to adjust the price so determined to cover a multitude of variables that enter into the manufacture of gray iron castings. The right thus to adjust the price defendants say is set out in the following excerpts from their "pricing method" letter of December 26, 1942, to-wit:

(1) "After a job is figured on this basis, the selling price is reviewed by Mr. Pufahl and on his experience of some 45 years in the foundry business, he checks the accuracy of the time required to make the job and the selling price per pound and if price is out of line, an adjustment is made to adjust it to a price that will meet competition."

(2) "This is a very simple and inexpensive way to determine prices and it has worked very satisfactorily for us for the past 5 years. Being in a highly competitive field, it is essential that prices be in line with costs if business is to be had, and in our experience this method accomplishes very satisfactory results."

All of defendants' contentions are based upon two propositions:

1. That after computing the maximum selling price by the application of the two definite and concrete factors named in the formula, that is, the $4 an hour time factor and the 3 cent per pound price of the metal, the defendants by the quoted excerpts from the letter of December 26, 1942, reserved the right to adjust the price up or down by considering a "multitude of variables" which were not set out or described in the letter; and

2. That Maximum Price Regulation 244 itself allows, recognizes and contemplates the use of variables which are not definite and concrete factors, and sanctions the kind of adjustment upward employed by the defendants.

■ In our opinion both of these propositions fail because they are not supported by the record and because they are contrary to the record. With respect to the contention that a right was reserved to adjust the price upward by adding costs of variables to the two definite factors stated, it is to be noted that the first sentence of the paragraph quoted and claimed to contain the reservation reads, "These two rates [factors] are all inclusive and take care of profit margins, overhead, and all labor." The review of the selling price by Mr. Pufahl after the job had been figured was for the purpose of checking the accuracy of the time and price of metal elements and, if the "price is out of line * * * to adjust it to a price that will meet competition." This reserved no right to adjust the price upward by adding to the computed price based upon "all inclusive" definite factors the cost of a multitude of variables. Such an interpretation can not, in our opinion, be read into the "pricing method" submitted by the defendants for the purpose of complying with the regulation.

That the present claim is contrary to the meaning and intent of defendants' pricing method is shown by the type of variables, the cost of which it is argued may be added to the price computed upon costs of the definite factors of time and cost of metal. These variables came into the record by means of the affidavit of Mr. Pufahl attached to the answer. He listed 19 such variables. They consist of such items as core makers' and molders' time, laborers' time, time for grinding gates, risers, fins, etc. All these items were included in the formula, however, for in their letter of December 26, 1942, defendants say: "We maintain time records on the direct labor time applied to each job as far as core time and molding time is concerned. No other time records are kept on a job basis. We then apply a flat hourly rate of $4.00 per hour to arrive at our piece price. * * These two rates are all inclusive. * * *" They did not mean that they paid core makers and molders $4 an hour. That this figure was used to cover all costs, except the cost of metal, is shown by other facts in the record. In the statement of considerations involved in the issuance of Maximum Price Regulation 244 for gray iron castings it appears that the average hourly cost of labor in gray iron foundries in the United States in February, 1942, was only 82.3 cents. Also, the average price per ton for gray iron castings was $146.90 while the maximum price computed by applying defendants' concrete factors without adding the cost of so-called variables is $300 a ton. From these comparisons it is evident that defendants intended and meant just what they said when they declared that "These two rates are all inclusive." No basis exists for the contention that the court order eliminates or ignores any element of defendants' pricing method or formula.

Defendants' second contention, namely, that Maximum Price Regulation 244 itself sanctions the adjustment upward of the maximum price computed by the definite formula in use at the foundry on February 1, 1942, is based upon section 1421.166(b)(1)(ii) of 244, which reads: "The price arrived at by use of the pricing method shall be adjusted for all applicable charges, discounts, quantity differentials or other allowances in use at the foundry on February 1, 1942."

This paragraph must be construed in connection with paragraph (i) immediately preceding it. Paragraph (i) enumerates the factors to be considered in arriving at the maximum price. They include all cost factors such as direct labor rates, direct material costs, overhead (burden) rates, subcontracted machinery costs, and mark-up, margin or profit. Paragraph (ii) then provides that the price so arrived at may be adjusted by adding "charges" and deducting discounts, differentials and other allowances. The word "charges" may not be construed to include any of the factors enumerated in paragraph (i), as defendants' contention implies. True the word "charges" has a very broad meaning in the law, Darling v. Rogers, 22 Wend., N.Y., 483, 491; and it must be interpreted in reference to the art to which it refers and the context in which it is used. Primarily the word means a burden and does not embrace compensation or cost. Sage v. Vinton County Com'rs, 82 Ohio St. 186, 189, 92 N.E. 24, 25. See, also, First Trust Co. of Omaha, v. Allen, 8 Cir., 60 F.2d 812, 816. As used in paragraph (ii) the word may, as suggested by plaintiff, apply to such items as freight or delivery charges, but clearly it does not embrace items properly included in costs of production, for all such costs are included in the defendants' own "pricing method" discussed supra.

The order appealed from is affirmed.